**REDACTED**

# 15-180(L)

**15-208 (XAP)**

# United States Court of Appeals for the Second Circuit

MIAMI GROUP, CONSISTING OF THE RETIREMENT SYSTEM FOR GENERAL EMPLOYEES OF THE CITY OF MIAMI BEACH, FRANCOIS R. GERARD, PRIGEST S.A. AND TOCQUEVILLE FINANCE S.A., PEARSON-DONIGER FAMILY, CONSISTING OF TWO SISTERS AND THEIR RESPECTIVE FAMILY MEMBERS BEATRICE DONIGER, GRANDCHILDREN'S TRUST BY BRUCE DONIGER TRUSTEE, ALISON DONIGER, MICHAEL DONIGER, EDWARD B. BRUNSWICK AND RUTH PEARSON TRUST PEARSON TRUSTEE, GAMCO INVESTORS, INCORPORATED, OPPENHEIM KAPITALANLAGEGESELLSCHAFT MBH, PLAINTIFF KBC ASSET MANAGEMENT N.V., CAPITALIA ASSET MANAGEMENT SGR, S.P.A., CAPITALIA INVESTMENT MANAGEMENT S.A., EURIZON CAPITAL SGR S.P.A., BADEN-WURTTEMBERGISCHE INVESTMENTGESELLSCHAFT MBH, BARCLAYS GLOBAL INVESTORS (DEUTSCHLAND),

*[caption continued on next page]*

On Appeal From The United States District Court
For The Southern District Of New York, No. 02-cv-05571-SAS

**JOINT APPENDIX, VOLUME III OF XIX, PAGES JA562-JA844**

Jeffrey A. Lamken
MOLO LAMKEN LLP
The Watergate, Suite 660
600 New Hampshire Ave., N.W.
Washington, D.C. 20037
(202) 556-2000

*Counsel of Record for Class Plaintiffs*

Miguel A. Estrada
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
(202) 955-8500

*Counsel of Record for Vivendi S.A.*

*[caption continued]*

COMINVEST ASSET MANAGEMENT GMBH, DEUTSCHE ASSET MANAGEMENT INVESTMENTGESELLSCHAFT MBH, DWS (AUSTRIA) INVESTMENTGESELLSCHAFT MBH, DWS INVESTMENT GMBH, ERSTE-SPARINVEST KAPITALANLAGEGESELLSCHAFT M.B.H., FORSTA AP-FONDEN, FORTIS INVESTMENT MANAGEMENT SA, KBC ASSET MANAGEMENT S.A., LANDESBANK BERLIN INVESTMENT GMBH, LBBW LUXEMBURG S.A., OPPENHEIM ASSET MANAGEMENT SERVICES S.A.R.L., PIONEER INVESTMENT MANAGEMENT LIMITED, PIONEER INVESTMENT MANAGEMENT SGRPA, PIONEER INVESTMENTS AUSTRIA GMBH, PIONEER INVESTMENTS KAPITALANLAGEGESELLSCHAFT MBH, RAIFFEISEN KAPITALANLAGE-GESELLSCHAFT M.B.H., SEB INVESTMENT MANAGEMENT AB, SKANDIA INSURANCE COMPANY LTD., UNION ASSET MANAGEMENT HOLDING AG, UNIVERSAL-INVESTMENT-GESELLSCHAFT MBH, SEB INVESTMENT GMBH, ANDRA AP-FONDEN, BAYERN-INVEST KAPITALANLAGEGESELLSCHAFT MBH, DEKA INVESTMENT GMBH, PRIGEST, S.A., TOCQUEVILLE FINANCE, S.A., ROSENBAUM PARTNERS, L.P., ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED, RUTH PEARSON TRUST, DEKA INTERNATIONAL (IRELAND) LIMITED, DEKA INTERNATIONAL S.A. LUXEMBURG, DEKA FUNDMASTER INVESTMENTGESELLSCHAFT MBH, FIDEURAM INVESTIMENTI S.G.R., FIDEURAM GESTIONS S.A., INTERFUND SICA V, FRANKFURT-TRUST INVESTMENT-GESELLSCHAFT MBH, FRANKFURT-TRUST INVEST LUXEMBURG AG, HELABA INVEST KAPITALANLAGEGESELLSCHAFT MBH, HSBC TRINKAUS & BURKHARDT AG, INTERNATIONALE KAPITALANLAGEGESELLSCHAFT MBH, MEAG MUNICH ERGO KAPITALANLAGEGESELLSCHAFT MBH, MEAG MUNICH ERGO ASSET MANAGEMENT GMBH, METZLER INVESTMENT GMBH, METZLER IRELAND LTD, NORDCON INVESTMENT MANAGEMENT AG, NORGES BANK, SWISS LIFE HOLDING AG, SWISS LIFE INVESTMENT MANAGEMENT HOLDING AG, SWISS LIFE ASSET MANAGEMENT AG, SWISS LIFE FUNDS AG, SWISS LIFE (BELGIUM) S.A., SWISS LIFE ASSET MANAGEMENT GMBH, SWISS LIFE ASSET MANAGEMENT (NEDERLAND) B.V., TREDJE AP-FONDEN, WESTLB MELLON ASSET MANAGEMENT KAPITALANLAGEGESELLSCHAFT MBH, ALECTA PENSIONSFORSAKRING, OMSESIDIGT, SJUNDE AP-FONDEN, VARMA MUTUAL PENSION INSURANCE COMPANY, DANSKE INVEST ADMINISTRATION A/S, AFA LIVFORSAKRINGSAKTIEBOLAG, AFA TRYGGHETSFORSAKRINGSAKTIEBOLAG, AFA SJUKFORSAKRINGSAKTIEBOLAG, AMF PENSION FONDFORVALTNING AB, ARBETSMARKNADSFORSAKRINGAR, PENSIONSFORSAKRINGSAKTIEBOLAG, PENSIONSKASSERNES ADMINSTRATION A/S, ARBEJDSMARKEDETS TILLAEGSPENSION, INDUSTRIENS PENSIONSFORIKRING A/S, ARCA SGR S.P.A.,

*[caption continued]*

ILMARINEN MUTUAL PENSION INSURANCE COMPANY, PRIMA SOCIETA' DI GESTIONE DEL RISPARMIO S.P.A., NORDEA INVEST FUND MANAGEMENT A/S, NORDEA FONDER AB, NORDEA INVESTMENT FUNDS COMPANY I.S.A., NORDEA FONDENE NORGE AS, NORDEA FONDBOLAG FINLAND AB, SWEDBANK ROBUR FONDER AB, FJARDE AP-FONDEN, OLIVIER CHASTAN, REED S. CLARK, DAHA DAVIS, COLLEN DODI, RUTH PEARSON TRUST PEARSON TRUSTEE, EDWARD B. BRUNSWICK, MICHAEL DONIGER, ALISON DONIGER, GRANDCHILDREN'S TRUST BY BRUCE DONIGER TRUSTEE, BRUCE DONIGER, BEATRICE DONIGER, JEFFREY KURTZ, PRICE HAL, W. SCOTT POLLAND, JR., NICHOLAS A. RADOSEVICH, CAISSE DE DEPOT ET PLACEMENT DU QUEBEC, AGF ASSET MANAGEMENT, S.A., IRISH LIFE INVESTMENT MANAGERS LIMITED,

*Plaintiffs-Appellees*,

BRUCE DONIGER, GERARD MOREL, OLIVER M. GERARD, THE RETIREMENT SYSTEM FOR GENERAL EMPLOYEES OF THE CITY OF MIAMI BEACH,

*Plaintiffs-Appellees/Cross-Appellants*,

WILLIAM CAVANAGH,

*Cross-Appellant*,

v.

VIVENDI, S.A.,

*Defendant-Appellant - Cross-Appellee*,

JEAN-MARIE MESSIER, GUILLAUME HANNEZO, VIVENDI UNIVERSAL,

*Defendants*.

# TABLE OF CONTENTS

Page

## DOCKET ENTRIES, PLEADINGS, ORDERS, AND EXPERT REPORTS


Docket Sheet (No. 1:02-cv-05571-SAS-HBP), Feb. 19, 2015 .......... JA1

Consolidation Order (Dkt. 7) (Oct. 1, 2002) .......... JA292

Consolidated Class Action Complaint (Dkt. 18) (Jan. 7, 2003) .......... JA294

Hannezo's Notice of Motion to Dismiss (Dkt. 20) (Feb. 24, 2003) .......... JA410

Vivendi's Notice of Motion to Dismiss (Dkt. 23) (Feb. 24, 2003) .......... JA412

Vivendi's Memorandum in Support of Motion to Dismiss (Dkt. 26) (Feb. 24, 2003) .......... JA415

Messier's Notice of Motion to Dismiss (Dkt. 28) (Feb. 24, 2003) .......... JA432

Vivendi's Reply Memorandum in Further Support of Motion to Dismiss (Dkt. 35) (Apr. 10, 2003) .......... JA435

Consolidation Order, *Liberty Media Corp. v. Vivendi Universal S.A.* (S.D.N.Y. 03-cv-2175) (Dkt. 14) (May 13, 2003) .......... JA443

First Amended Consolidated Class Action Complaint (Dkt. 93) (Nov. 24, 2003) .......... JA445

Notice of Plaintiffs' Substituted Motion for Class Certification (Dkt. 234) (July 15, 2005) .......... JA560

Plaintiffs' Memorandum of Law in Support of Substituted Motion for Class Certification (Dkt. 235) (July 15, 2005) .......... JA562

Bisiaux Declaration in Opposition to Plaintiffs' Motion for Class Certification and Exhibit 5 (Sept. 30, 2005) (Sealed) .......... JA581

Vivendi's Memorandum in Opposition to Plaintiffs' Substituted Motion for Class Certification (Oct. 5, 2005) (Sealed) .......... JA594

Plaintiffs' Reply in Support of Their Substituted Motion for Class Certification (Dec. 21, 2005) (Sealed) .......... JA606

Consolidation Order (Dkt. 395) (Dec. 14, 2007) .............................................. JA642

Report of Andrew M. Mintzer, CPA and Exhibit C (Dec. 21, 2007) (Sealed) .............................................................. JA648

Expert Report of Blaine F. Nye, Ph.D. and Exhibits 1-9 and 13-15 (Dec. 21, 2007) (Sealed) .............................................................. JA664

Expert Report of William L. Silber and Exhibits (Mar. 7, 2008) (Sealed) .............................................................. JA1025

Memorandum in Opposition to Vivendi's Motion for Partial Reconsideration, (Dkt. 506) (May 2, 2008) (Redacted) ....................... JA1177

Rebuttal Expert Report of Blaine F. Nye, Ph.D. (May 15, 2008 ) (Sealed) .............................................................. JA1180

Memorandum in Support of Defendants' Motion for Summary Judgment Against Class Plaintiffs for Failure to Establish Loss Causation (Aug. 15, 2008) (Sealed) .............................................................. JA1439

Statement of Undisputed and Material Facts in Support of Defendants' Motion for Summary Judgment Against Class Plaintiffs for Failure to Establish Loss Causation (Aug. 15, 2008) (Sealed) ............................ JA1473

Memorandum in Support of Defendants' Motion for Summary Judgment Against Individual Plaintiffs for Failure to Establish Loss Causation (Aug. 15, 2008) (Sealed) .............................................................. JA1478

Revised Memorandum Opinion and Order on Motion for Summary Judgment for Loss Causation (Dkt. 767) (Apr. 6, 2009) ...................... JA1512

Notice of Defendants' Motion to Exclude the Expert Testimony of Dr. Blaine Nye (Dkt. 828) (June 2, 2009) ........................................... JA1548

Memorandum of Law in Support of Defendants' Motion to Exclude the Expert Testimony of Dr. Blaine Nye (June 2, 2009) (Sealed) ............. JA1552

Plaintiffs' Opposition to Defendants' Motion to Exclude the Testimony of Dr. Blaine Nye (June 30, 2009) (Sealed) ............................................ JA1598

Memorandum in Support of Defendants' Motion for Judgment as a Matter of Law Against Class Plaintiffs for Failure to Establish Securities Fraud (Dkt. 971) (Nov. 23, 2009) .......... JA1602

Plaintiffs' Objections and Responses to the Court's Proposed Jury Instructions and Verdict Form (Dkt. 993) (Jan. 5, 2010) .......... JA1683

Exhibit C to Plaintiffs' Objections and Responses to the Court's Proposed Jury Instructions and Verdict Form (Dkt. 993-4) (Jan. 5, 2010): Plaintiffs' Requested Amendment to the Court's Proposed Verdict Form .......... JA1688

Defendants' Revised Objections to the Court's Proposed Charge to the Jury (Dkt. 994) (Jan. 6, 2010) .......... JA1692

Memorandum in Support of Vivendi's Renewed Motion for Judgment as a Matter of Law (Dkt. 1022) (Mar. 26, 2010) .......... JA1708

Exhibit 10 to Dixon Declaration (Dkt. 1023-11) (Mar. 26, 2010): Plaintiffs' Supplemental Explanations Regarding Misstatements/Omissions Listed in Table A .......... JA1778

Exhibit 26 to Dixon Declaration (Dkt. 1023-26) (Mar. 26, 2010): Defendants' Objections to Judge Holwell's Proposed Jury Charge (Jan. 4, 2010) .......... JA1797

Exhibit 40 to Dixon Declaration (Dkt. 1023-40) (Mar. 26, 2010): Plaintiffs' Table of Misstatements and Omissions (Dec. 24, 2009) .......... JA1914

Exhibit 41 to Dixon Declaration (Dkt. 1023-41) (Mar. 26, 2010): Defendants' Response to Plaintiffs' Proposed Table of Misstatements and Omissions (Dec. 28, 2009) .......... JA1933

Exhibit 61 to Margolies Declaration (Dkt. 1052-72–1052-76) (May 13, 2010): Plaintiffs' Responses and Objections to Defendants' Amended Second Set of Interrogatories, and Exhibit A thereto (July 27, 2007) .......... JA1941

Exhibit 62 to Margolies Declaration (Dkt. 1052-77–1052-80) (May 13, 2010): Plaintiffs' Amended Responses and Objections to Defendants' Amended Second Set of Interrogatories, and Exhibit A thereto (Oct. 29, 2007) .......... JA2052

Dixon Supplemental Declaration in Support of Renewed Motion for Judgment as a Matter of Law (Dkt. 1059) (June 9, 2010).................... JA2171

Exhibit 58 to Dixon Declaration (Dkt. 1059-9) (June 9, 2010): Court Exhibit 4, Exhibits Admitted into Evidence (Jan. 11, 2010) ..... JA2173

Exhibit 59 to Dixon Declaration (Dkt. 1059-10) (June 9, 2010): Plaintiffs' Exhibit 310, Gibert Letter (July 18, 2000) .......................................... JA2249

Margolies Declaration in Support of Plaintiffs' Supplemental Memorandum Concerning the Impact of *Morrison* (Dkt. 1075) (July 16, 2010)........ JA2254

Exhibit 3 to Margolies Declaration (Dkt. 1075-4) (July 16, 2010): Brief for European Aeronautic Defence & Space Co. N.V. et al. as *Amicus Curiae* in *Morrison v. National Australia Bank Ltd.* (U.S. 08-1191) (Feb. 26, 2010)................................................................... JA2256

Exhibit 7 to Margolies Declaration (Dkt. 1075-8) (July 16, 2010): Vivendi Universal, SEC Form F-6 (Nov. 3, 2000) ............................. JA2305

Exhibit 8 to Margolies Declaration (Dkt. 1075-9) (July 16, 2010): Vivendi Universal, SEC Form 8-A (Dec. 29, 2000) ........................... JA2307

Exhibit 9 to Margolies Declaration (Dkt. 1075-10) (July 16, 2010): Vivendi Universal, Cover Pages of Annual Reports filed on Form 20-F for 2000 (PX-701), 2001 (PX-856), and 2002 (PX-604)................. JA2310

Exhibit 10 to Margolies Declaration (Dkt. 1075-11) (July 16, 2010): Edgar M. Bronfman SEC Form SC-13D (Dec. 18, 2000) .................. JA2315

Vivendi's Supplemental Memorandum of Law Regarding *Morrison* (Dkt. 1077) (July 16, 2010) ............................................................ JA2344

Plaintiffs' Memorandum of Law in Support of Renewed Motion for Approval of Post-Verdict Class Notice and Claims Administration (Dkt. 1101) (Sept. 21, 2011)............................................................ JA2350

Vivendi's Memorandum of Law in Opposition to Plaintiffs' Renewed Motion for Approval of Post-Verdict Class Notice and Claims Administration (Dkt. 1109) (Nov. 7, 2011)......................................... JA2362

Plaintiffs' Reply in Support of Their Renewed Motion for Approval of Post-Verdict Class Notice and Claims Administration (Dkt. 1113) (Dec. 19, 2011) ........ JA2366

Notice of Case Reassignment (Dkt. 1116) (Feb. 8, 2012) ........ JA2384

Exhibit 1 to Slifkin Declaration (Dkt. 1135-1) (May 9, 2012): Vivendi Universal, SEC Form F-4 (Oct. 30, 2000) ........ JA2386

Order for Administering Claims Process (Dkt. 1197) (Nov. 13, 2012) ........ JA2391

Letter to Judge Scheindlin from James W. Quinn (Dkt. 1204) (July 21, 2014) ........ JA2412

Proposed Order for 54(b) Judgment (Dkt. 1228) (Nov. 10, 2014) ........ JA2415

Notice of Appeal (Dkt. 1234) (Jan. 21, 2015) ........ JA2465

Notice of Cross-Appeal (Dkt. 1235) (Jan. 22, 2015) ........ JA2466

**TRANSCRIPTS**

Hearing Transcript (Dkt. 752) (Mar. 2, 2009) ........ JA2467

Trial Transcript (Dkt. 1006) (Oct. 5, 2009) ........ JA2470

Trial Transcript (Dkt. 1006) (Oct. 6, 2009) ........ JA2471

Trial Transcript (Dkt. 1006) (Oct. 8, 2009) ........ JA2480

Trial Transcript (Dkt. 1006) (Oct. 14, 2009) ........ JA2496

Trial Transcript (Dkt. 1006) (Oct. 15, 2009) ........ JA2504

Clip Report (Oct. 25, 2009) ........ JA2508

Trial Transcript (Dkt. 1008) (Oct. 26, 2009) ........ JA2517

Trial Transcript (Dkt. 1008) (Oct. 27, 2009) ........ JA2530

Trial Transcript (Dkt. 1008) (Oct. 28, 2009) ........ JA2550

Trial Transcript (Dkt. 1005) (Oct. 29, 2009) ........ JA2554

Trial Transcript (Dkt. 1005) (Oct. 30, 2009) ........ JA2556

Trial Transcript (Dkt. 1005) (Nov. 2, 2009) .................................................. JA2576

Trial Transcript (Dkt. 1009) (Nov. 5, 2009) .................................................. JA2608

Trial Transcript (Dkt. 1009) (Nov. 6, 2009) .................................................. JA2616

Trial Transcript (Dkt. 1009) (Nov. 9, 2009) .................................................. JA2666

Trial Transcript (Dkt. 1009) (Nov. 10, 2009) ................................................ JA2686

Trial Transcript (Dkt. 1002) (Nov. 12, 2009) ................................................ JA2698

Trial Transcript (Dkt. 1002) (Nov. 13, 2009) ................................................ JA2707

Trial Transcript (Dkt. 1002) (Nov. 16, 2009) ................................................ JA2711

Trial Transcript (Dkt. 1002) (Nov. 17, 2009) ................................................ JA2715

Trial Transcript (Dkt. 1010) (Nov. 18, 2009) ................................................ JA2863

Trial Transcript (Dkt. 1010) (Nov. 19, 2009) ................................................ JA3055

Trial Transcript (Dkt. 1010) (Nov. 20, 2009) ................................................ JA3179

Trial Transcript (Dkt. 1010) (Nov. 23, 2009) ................................................ JA3184

Trial Transcript (Dkt. 1010) (Nov. 24, 2009) ................................................ JA3187

Trial Transcript (Dkt. 1003) (Nov. 30, 2009) ................................................ JA3192

Trial Transcript (Dkt. 1003) (Dec. 2, 2009) .................................................. JA3197

Trial Transcript (Dkt. 1003) (Dec. 3, 2009) .................................................. JA3296

Trial Transcript (Dkt. 1000) (Dec. 8, 2009) .................................................. JA3321

Trial Transcript (Dkt. 1000) (Dec. 9, 2009) .................................................. JA3349

Trial Transcript (Dkt. 1000) (Dec. 11, 2009) ................................................ JA3516

Trial Transcript (Dkt. 1004) (Dec. 14, 2009) ................................................ JA3522

Trial Transcript (Dkt. 1004) (Dec. 16, 2009) ................................................ JA3536

Trial Transcript (Dkt. 1004) (Dec. 17, 2009) ................................................ JA3592

Trial Transcript (Dkt. 1001) (Jan. 4, 2010) ........ JA3601

Trial Transcript (Dkt. 1001) (Jan. 5, 2010) ........ JA3605

Trial Transcript (Dkt. 1001) (Jan. 7, 2010) ........ JA3614

Trial Transcript (Dkt. 1001) (Jan. 8, 2010) ........ JA3618

Trial Transcript (Dkt. 1007) (Jan. 11, 2010) ........ JA3625

Trial Transcript (Dkt. 1007) (Jan. 29, 2010) ........ JA3673

Hearing Transcript (Dkt. 1080) (July 26, 2010) ........ JA3677

Trial Transcript, *Liberty Media Corp. v. Vivendi Universal S.A.* (S.D.N.Y. 03-cv-2175) (Dkt. 295) (June 14, 2012) ........ JA3695

Oral Argument Transcript (Dkt. 1192) (Sept. 11, 2012) ........ JA3698

**EXHIBITS**

PX 1: Book of Warnings from Guillaume Hannezo to Jean-Rene Fourtou, Volume I (July 30, 2002) ........ JA3725

PX 2: Book of Warnings from Guillaume Hannezo to Jean-Rene Fourtou, Volume II (July 30, 2002) (Translation) ........ JA3978

PX 25: E-mail from Michelle Buchalski to Victor Aviles, et al. (Oct. 30, 2001) ........ JA3981

PX 53: Press Release, Vivendi Universal, Vivendi Universal Media & Communications Reports Strong First Quarter Operational Results (Apr. 24, 2002) ........ JA3993

PX 102: E-mail from Karen Trickett to Laurence Daniel and Eileen McLauglin (Oct. 17, 2001) ........ JA4000

PX 107: E-mail from Catherine Gros to Jean-Marie Messier and Guillaume Hannezo (Apr. 23, 2002) ........ JA4032

PX 110: E-mail from Nick Henny to Karen Trickett (Jan. 31, 2001) ........ JA4045

PX 112: Draft Press Release, Vivendi Universal, Vivendi Universal Announces Very Strong First Quarter 2001 Results – Ahead of Targets – With Strong Revenue and EBITDA Growth for its Media and Communications Businesses (Apr. 23, 2001) ................................ JA4047

PX 136T: Translated memorandum from Guillaume Hannezo to Jean-Marie Messier ................................ JA4054

PX 148: Memorandum from Guillaume Hannezo to Jean-Marie Messier (July 17, 2001) ................................ JA4057

PX 168T: Translated Memorandum from Guillaume Hannezo ................................ JA4059

PX 193: E-mail from Vivendi Universal (July 23, 2001, 01:44 AM) ................................ JA4061

PX 252T: Translated Memorandum from Guillaume Hannezo to Dominique Gibert (Dec. 14, 2001) ................................ JA4067

PX 261: E-mail from Eileen McLaughlin to Guillaume Hannezo (May 2, 2002) ................................ JA4069

PX 262: E-mail from Laurence Daniel to Guillaume Hannezo (May 2, 2002, 1:00 PM) ................................ JA4070

PX 262T: Translated E-mail from Laurence Daniel to Guillaume Hannezo (May 2, 2002, 1:00 PM) ................................ JA4071

PX 273T : Translated E-mail from Guillaume Hannezo to Jean-Marie Messier (Dec. 13, 2001) ................................ JA4072

PX 280: Transcript of Vivendi Universal Conference Call on First Half 2001 Results: Overview (Sept. 25, 2001) ................................ JA4073

PX 284T: Translated Memorandum from Guillaume Hannezo (Jan. 15, 2002) ................................ JA4097

PX 295: Press Release, Vivendi Universal, Vivendi Universal Reports 2001 Results (Mar. 5, 2002) ................................ JA4101

PX 342: Press Release, Vivendi Universal, Vivendi Universal 2000 Results (Mar. 9, 2001) ................................ JA4103

PX 376: Press Release, Vivendi Universal, Vivendi Universal Sold 55 Million Treasury Shares for at Least 3.3 Billion Euros (Jan. 7, 2002) ........ JA4117

PX 415: Memorandum from Guillaume Hannezo to Jean-Marie Messier, Edgar Bronfman, Jr. and Eric Licoys ........ JA4119

PX 451: E-mail from Michelle Buchalski to Amy Barrett, et al. (Sept. 25, 2001) ........ JA4122

PX 474: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (June 26, 2001) ........ JA4132

PX 499: Transcript of Vivendi Universal Press Conference (Dec. 17, 2001) ........ JA4152

PX 506: *Moody's Affirms Ratings of Vivendi Universal SA, Outlook Is Negative*, Moody's Investors Service (Dec. 17, 2001) ........ JA4164

PX 539: E-mail from Guillaume Hannezo to John Luczycki and Dominique Gibert (Jan. 30, 2002) ........ JA4166

PX 618: Press Release, Vivendi Universal, Seagram's Spirits and Wines Business Sold to Diageo and Pernod Ricard (Dec. 19, 2000) ........ JA4167

PX 626: E-mail from Nick Henny to Edgar Bronfman Jr. and Zach Horowitz (Oct. 10, 2001, 5:40 PM) ........ JA4168

PX 654: E-mail from Edgar Bronfman Jr. to Brian Mulligan (Sept. 17, 2000) ........ JA4169

PX 680: Press Release, Vivendi Universal, Vivendi Universal Preliminary Revenues for 2000 (Feb. 14, 2001) ........ JA4170

PX 701: Vivendi Universal, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 20-F) (July 2, 2001) ........ JA4174

PX 709: E-mail from Edgar Bronfman Jr. to Nick Henny et al. (Jan. 11, 2002) ........ JA4578

PX 720: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Jan. 12, 2001) ........ JA4579

PX 761: Transcript of Vivendi Universal Conference Call (June 26, 2002) .......... JA4592

PX 762: Transcript of Vivendi Universal Accounting Workshop Conference Call on US GAAP & French GAAP: A Comparison (Mar. 6, 2002) .......... JA4607

PX 769: Transcript of Vivendi Universal Conference Call on 2001 Annual Results (Mar. 5, 2002) .......... JA4619

PX 807T: Translated E-mail from Guillaume Hannezo to Ariane De-Lamaze and Jean-Laurent Nabet (Sept. 21, 2001) .......... JA4622

PX 854: Press Release, Vivendi Universal, Update on Vivendi Universal's Cash Position (May 30, 2002) .......... JA4623

PX 856: Vivendi Universal, Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934 (Form 20-F) (May 28, 2002) .......... JA4624

PX 859: Transcript of Vivendi Universal Conference Call (Mar. 5, 2002) .......... JA4638

PX 859T: Translated transcript of Vivendi Universal Conference Call (Mar. 5, 2002) .......... JA4652

PX 865: Press Release, Vivendi Universal, Elektrim (Dec. 12, 2001) .......... JA4666

PX 899: Press Release, Vivendi Universal, Vivendi Universal's Comments on the New Moody's Rating (May 3, 2002) .......... JA4667

PX 929: E-mail from Andrew Stokoe to John Luczycki (Sept. 12, 2001) .......... JA4668

PX 938: Press Release, Vivendi Universal, Vivendi Universal Announces Very Strong First Quarter 2001 Results – Ahead of Targets – with 13% Revenue and 112% EBITDA Growth for its Media and Communications Businesses (Apr. 23, 2001) .......... JA4669

PX 1033: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Apr. 15, 2002) .......... JA4672

PX 1075: Vivendi Universal, Registration Statement (Form F-4) (Oct. 30, 2000) .......... JA4676

PX 1088: Merrill Lynch Analyst Report, Vivendi Universal: Limited Ad Exposure, Performance Ahead of Targets (Mar. 27, 2001) ................. JA4699

PX 1111: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Nov. 12, 2001) ........................................................................ JA4705

PX 1123: *Vivendi CEO Slams "Unfair" Share Price Fall*, Reuters (Feb. 6, 2002) ........................................................................ JA4717

PX 1127: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Mar. 5, 2002) ........................................................................ JA4725

PX 1131: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Mar. 28, 2002) ........................................................................ JA4741

PX 1133: BusinessWeek Readers Report, Memo from Jean-Marie Messier (Apr. 1, 2002) ........................................................................ JA4746

PX 1154: *Vivendi Sold Shares in Water Unit to Deutsche Bank*, Bloomberg (June 20, 2002) ........................................................ JA4749

PX 1288: Respondents Vivendi Universal, S.A., Vivendi Universal Canada Inc., and Vivendi Universal Holding I Corp.'s Answer and Response to Jean-Marie Messier's Statement of Claim and Counterclaims (Dec. 16, 2002) ........................................................................ JA4751

PX 1289: Vivendi's Pre-Hearing Brief (May 9, 2003)................................. JA4788

PX 1291: Vivendi's Memorandum of Law in Support of Motion to Dismiss Petition to Confirm and to Vacate Arbitration Award, or Alternatively to Stay this Proceeding (July 9, 2003)................................................ JA4825

PX 1434: E-mail from Alexandra Fichelson to Ariane De-Lamaze and Laurence Daniel (July 19, 2001, 12:02 PM) ...................................... JA4829

PX 1486: Plaintiffs' Daily Inflation for Vivendi Shares, Per Share; 10/30/2000 – 8/14/2002.............................................................. JA4838

DX 240: BNP Paribas Analyst Report, Vivendi Universal: The Losing Streak Continues (May 3, 2002)....................................................... JA4848

DX 253: JPMorgan Analyst Report, Vivendi Universal: 1H01 Revenue & EBITDA: Expect Mixed Results … What Would Curious George Say? (July 18, 2001) ........ JA4849

DX 313: JPMorgan Analyst Report, Vivendi Universal: Preview of 2001 Results Following Meeting With Management (Feb. 5, 2002) ........ JA4851

DX 398: Merrill Lynch Analyst Report, Vivendi Universal: Accounting and Management Issues Outweigh by Growth Dynamic (Jan. 25, 2001) ........ JA4855

DX 551: Deutsche Bank Analyst Report, Vivendi Universal: Will the Real Slim Vivendi Please Stand Up (Mar. 28, 2001) ........ JA4859

DX 794: Press Release, Moody's Investors Service, Moody's Changes Direction of Review of Vivendi SA From Uncertain to Possible Downgrade (July 4, 2000) ........ JA4863

DX 796: JPMorgan Analyst Report, Vivendi Universal: Are You Ready to Rock? (Apr. 18, 2001) ........ JA4865

DX 957: Morgan Stanley Dean Witter, Vivendi Universal: Initiation of Coverage (June 1, 2001) ........ JA4870

DX 1147: Standard & Poor's Analyst Report, Research: New Entry Vivendi Universal to Be Assigned 'BBB/A-2' Outlook Will Be Stable (Nov. 29, 2000) ........ JA4874

DX 1150: Standard & Poor's Analyst Report, Research: Vivendi Universal Still on Watch Neg After Company's Announcement of USA Networks Inc. Purchase (Dec. 17, 2001) ........ JA4876

DX 1183: Carol Matlack, *Welcome to the Real World*, Business Week (Dec. 4, 2000) ........ JA4878

DX 1191: Standard & Poor's Analyst Report, Research: Vivendi Universal S.A. (Jan. 8, 2001) ........ JA4881

DX 1193: Press Release, Moody's Investor Service, Moody's Confirms Vivendi Universal's Ratings (Jan. 18, 2001) ........ JA4884

DX 1249: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Oct. 17, 2001) ........ JA4887

DX 1277: Robert Elliott, *Vivendi, Techs Lead Paris Bourse Down*, Reuters (Jan. 7, 2002) ........ JA4916

DX 1280T: Anne-Laure Julien, *Stock Market: Deutsche Bank and Goldman Sachs Required to Reclaim the Shares: No Takers for Vivendi Universal's Treasury Shares* (Jan. 9, 2002) (Translated) ........ JA4918

DX 1314: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Apr. 4, 2002) ........ JA4919

DX 1323: Vivendi Universal, S.A., Rapport Annuel sur L'Exercice 2001 (Apr. 10, 2002) ........ JA4924

DX 1328: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Apr. 15, 2002) ........ JA4928

DX 1336T: Vivendi Universal, Excerpts of Presentation of the Company and of the Group (Translated) ........ JA4933

DX 1411: Vivendi Universal, Report of Foreign Private Issuer (Form 6-K) (Sept. 25, 2002) ........ JA4937

DX 1828: Demonstrative: "Nye Price Inflation" ........ JA4941

DX 1905: Press Release, Vivendi Universal, Deleveraging and Liquidity Details (June 26, 2002) ........ JA4942

DX 1907: Demonstratives Used During Closing Statements on Behalf of Vivendi, S.A. ........ JA4945

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ORIGINAL

05 JUL 15 PM 10:42

| IN RE VIVENDI UNIVERSAL, S.A. SECURITIES LITIGATION | Civil Action No. 02 Civ. 5571 (RJH/HBP) |
|---|---|

#235

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFFS' SUBSTITUTED MOTION FOR CLASS CERTIFICATION**

ABBEY GARDY, LLP
Arthur N. Abbey (AA-8074)
James S. Notis (JN-4189)
Richard B. Margolies (RM-9311)
212 East 39th Street
New York, New York 10016
212.889.3700

MILBERG WEISS BERSHAD & SCHULMAN LLP
David J. Bershad (DB-9981)
Sol Schreiber (SS-5927)
William C. Fredericks (WF-1576)
Brian C. Kerr (BK-6074)
One Pennsylvania Plaza
New York, New York 10119
212.594.5300

*Co-Lead Counsel for Plaintiffs*

## I. INTRODUCTION

Olivier M. Gerard, the Retirement System for General Employees of the City of Miami Beach (*Miami Beach*), Bruce Doniger, Gerard Morel, Capital Invest Die Kapitalanlagegesellschaft der Bank Austria Creditanstalt Gruppe GmbH (in its capacity as manager of and attorney-in-fact for Apk EU-Big Caps Fund) (*Capital Invest*) and William Cavanagh (*plaintiffs* or *proposed class representatives*) respectfully submit this memorandum of law in support of their substituted motion for certification of a class (the *Class*) for the prosecution of their federal securities claims against defendant Vivendi Universal, S.A. (*Vivendi*) and its two most senior former officers: defendants Jean-Marie Messier (former CEO) and Guillaume Hannezo (former CFO) (*Individual Defendants*).[1]

Plaintiffs allege that defendants' public statements during the *Class Period* (October 30, 2000 through August 14, 2002, inclusive) were materially false and misleading because they failed to disclose, among other things, that: (1) Vivendi's corporate acquisition spree had brought Vivendi to the brink of a potentially catastrophic liquidity crisis; (2) Vivendi had wrongfully

---

[1] Consistent with plaintiffs' prior representations to the Court and defendants, and pursuant to the Court's Order of July 6, 2005, plaintiffs hereby file their substituted motion for class certification, which drops original movants who no longer seek class representative status and adds as additional movants those non-original movants who now seek class representative status. The substituted motion therefore now correctly identifies the names of those persons and entities offered as class representatives in this action. Plaintiffs note, however, that they have not, consistent with customary practice and their understanding of the Court's June 1, 2005 Order, sought to amend the previously filed motion by adding detailed discussion of the background and qualifications of each proposed class representative, inasmuch as (a) class discovery (including depositions) has not yet been completed, and (b) issues relating to the adequacy of individual proposed class representatives are customarily addressed in defendants' opposition papers (if any) and plaintiffs' reply papers, based upon the full record developed in the course of class discovery. Plaintiffs also note that, pursuant to the Court's June 1, 2005 Order (as amended by Order dated July 8, 2005), the Court has directed that with respect to the possible submission of expert opinions on the motion, defendants are to submit their expert affidavits (if any) by September 12, 2005, and plaintiffs are to submit their expert affidavits (if any) by October 31, 2005.

failed to write-down billions of dollars of impaired goodwill from prior acquisitions (e.g., Canal Plus and U.S. Filter); and (3) although it consolidated the financial results (including billions of dollars in revenue) of several majority owned subsidiaries (e.g., Cegetel and Maroc Telecom), Vivendi did not have access to the cash flows of these entities. As a result of Vivendi's materially false and misleading statements and omissions, plaintiffs allege that the prices of Vivendi securities were artificially inflated during the Class Period, thereby causing damage to members of the Class who purchased such securities in reliance on the integrity of the market.

The Second Circuit emphatically favors the use of class actions for resolution of securities claims.[2] To that end, the Second Circuit has directed courts to interpret and apply Rule 23 liberally, rather than restrictively.[3] Accordingly, in securities cases, "when a court is in doubt

[2] *Green v. Wolf Corp.*, 406 F.2d 291, 296-97 (2d Cir. 1968) (Rule 23 "illustrates the need for an effective use of class actions in securities act litigation").

[3] *Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176 (2d Cir. 1990) ("In light of the importance of the class action device in securities fraud suits, these factors are to be construed liberally."); *Korn v. Franchard Corp.*, 456 F.2d 1206, 1209 (2d Cir. 1972) (courts must be "mindful of the admonition of liberality toward demands for class suit status in securities litigation"); *Escott v. Barchris Constr. Corp.*, 340 F.2d 731, 733 (2d Cir. 1965) ("The usefulness of the representative action as a device for the aggregation of small claims is 'persuasive of the necessity of a liberal construction of . . . Rule 23.'") (citation omitted); *see also Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) (Rule 23 is to be applied in a liberal fashion when considering claims brought under the federal securities laws); *In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 373 (S.D.N.Y. 2000) ("our Court of Appeals has directed district courts to avoid applying Rule 23 under a restrictive interpretation"); *In re Blech Sec. Litig.*, 187 F.R.D. 97, 102 (S.D.N.Y. 1999) ("Class action treatment of related claims is particularly appropriate when plaintiffs seek redress for violations of the securities laws. It is well recognized that private enforcement of these laws is a necessary supplement to government regulation."); *Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 54 (S.D.N.Y. 1993) (there is a "preference for class certification in securities cases" as certification is important "for small securities holders located throughout the country"); *Epifano v. Boardroom Bus. Prods., Inc.*, 130 F.R.D. 295, 298 (S.D.N.Y. 1990) ("There is a strong public policy in favor of private enforcement of the nation's securities laws . . . . A class action is both an effective and appropriate method for resolving securities law claims.").

as to whether or not to certify a class action, the court should err in favor of allowing the class to go forward."[4]

As set forth below, movants have overwhelmingly satisfied the requirements of Rule 23. The proposed class representatives and their counsel will fairly and adequately protect the interests of the Class they seek to represent, which consists of all persons who purchased or otherwise acquired the common stock (ordinary shares) or American Depositary Shares (*ADSs*) of Vivendi during the Class Period. Each of the proposed class representatives' claims is typical. In this securities litigation, common questions predominate over any questions affecting only individual members of the Class. All members of the Class seek to prove the same misrepresentations and omissions. Co-Lead Counsel have vigorously pursued the interests of the Class throughout this litigation. Co-Lead Counsel have filed a First Amended Consolidated Class Action Complaint (*Complaint*), successfully prosecuted this case through the lead plaintiff appointment process, defeated defendants' motions to dismiss (and subsequent motions for reconsideration), and engaged in extensive discovery including the review of thousands of pages of documents. Furthermore, Co-Lead Counsel have responded to defendants' interrogatories and

---

[4] *Blech*, 187 F.R.D. at 102. By providing a single forum in which to litigate the same or similar claims, a class action also affords an indispensable mechanism for the conservation of judicial resources. *See In re Initial Public Offering Sec. Litig.*, 21 MC 92 (SAS), 2004 U.S. Dist. LEXIS 20497, *3 (S.D.N.Y. Oct. 13, 2004) ("'The class action device was designed to promote judicial efficiency and to provide aggrieved persons a remedy when individual litigation is economically unrealistic, as well as to protect the interests of absentee class members.'") (quoting 5 JAMES WM. MOORE, et al., MOORE'S FEDERAL PRACTICE ¶ 23.03 (3d ed. 2004); *see also Eisenberg v. Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) ("the effectiveness of the securities laws may depend in large measure on the application of the class action device"); *Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."). Rule 23 is, therefore, broadly structured so as to facilitate certification of class actions. "The interests of justice require that in a doubtful case . . . any error, if there is to be one, should be committed in favor of allowing a class action." *Eisenberg*, 766 F.2d at 785 (quoting *Esplin v. Hirschi*, 402 F.2d 94, 101 (10th Cir. 1968)).

requests for production of documents, and the proposed class representatives have been deposed or will be appearing for deposition.

Accordingly, plaintiffs respectfully request that this action be certified as a class action.

## II. PROCEDURAL HISTORY

Plaintiffs filed their original complaint in this action in July 2002, shortly after defendant Messier was forced to resign and Vivendi's new management acknowledged the existence of a "liquidity issue." Complaint at ¶ 110. On November 1, 2002, pursuant to the Private Securities Litigation Reform Act of 1995, Judge Baer appointed the Miami Group[5] and the Pearson-Doniger Family[6] as co-lead plaintiffs, and approved their selection of counsel, the firms of Milberg Weiss Bershad & Schulman LLP (*Milberg Weiss*)[7] and Abbey Gardy, LLP (*Abbey Gardy*).

Plaintiffs' Consolidated Class Action Complaint was filed on January 7, 2003. Each of the defendants moved to dismiss. On November 3, 2003, Judge Baer denied all motions to dismiss claims under Section 10(b) of the Securities Exchange Act of 1934. In particular, Judge Baer found that defendants' conduct in the United States was more than merely preparatory to the alleged fraudulent scheme, and that accordingly the Court had subject matter jurisdiction over the claims brought by foreign purchasers of Vivendi ordinary shares:

> Contrary to defendants' characterization, their conduct can hardly be deemed merely preparatory within the United States Given [individual defendants]

---

[5] The Miami Group consisted of the Retirement System for General Employees of the City of Miami Beach, Olivier M. Gerard, Francois R. Gerard, Prigest S.A. and Tocqueville Finance S.A.

[6] The Pearson-Doniger Family consists of Bruce Doniger, Beatrice Doniger, Grandchildren's Trust by Bruce Doniger Trustee, Michael Doniger, Edward B. Brunswick, and Ruth Pearson Trust Pearson Trustee. The Pearson-Doniger Family originally included Alison Doniger, who has since withdrawn as a lead plaintiff.

[7] Formerly known as Milberg Weiss Bershad Hynes & Lerach LLP.

> Messier's and Hannezo's decision to move to the United States, allegedly to better direct corporate operations and more effectively promote misleading perceptions on Wall Street . . . one can reasonably infer that the alleged fraud on the American Exchange was a 'substantial' or 'significant contributing cause of [foreign investor's] decision[s] to purchase [Vivendi's] stock' abroad.[8]

On September 21, 2004, this Court denied defendants' motions for reconsideration.[9]

On October 20, 2004, plaintiffs filed their original motion for class certification. On April 21, 2005, this Court granted the motions of named plaintiffs and proposed class representatives Prigest S.A. and Toqueville Finance S.A. to withdraw as named plaintiffs and proposed class representatives. That same day, the Court also granted the motions of Gerard Morel and Capital Invest to intervene as named plaintiffs for the purpose of allowing them to seek to become additional class representatives. After advising the Court that one of the proposed class representatives (StoneRidge Investment Partners, LLC) sought to withdraw due to unforeseen business-related developments in May 2005, by Order dated June 1, 2005 the Court granted plaintiffs permission to move to substitute an additional class representative by June 10, 2005. Plaintiffs moved thereafter to substitute William Cavanagh as an additional proposed class representative, and the Court granted that motion on July 6, 2005. As part of the Court's July 6, 2005 Order, the Court directed Mr. Cavanagh (and by implication all plaintiffs) to have a formal class certification motion on file by July 15, 2005.

---

[8] *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571, 2003 U.S. Dist. LEXIS 19431, at *22-23 (S.D.N.Y. Nov. 4, 2003).

[9] Judge Baer granted plaintiffs leave to amend their claims under Section 14(a) of the 1934 Act, as well as their claims under Sections 11 and 12(a)(2) of the Securities Act of 1933, based on standing issues. Plaintiffs filed their amended complaint on November 24, 2003. The Court granted defendants' subsequent motions to dismiss plaintiffs' amended Section 14 claim.

## III. ARGUMENT

### A. The Requirements Of Rule 23

Federal Rule of Civil Procedure 23 governs class certification. To be certified, a putative class must meet all four prerequisites of Rule 23(a), as well as the requirements of one of the three subsections of Rule 23(b). In this case, as in most cases seeking monetary damages, plaintiffs must demonstrate that the class meets the four requirements of Rule 23(a) – numerosity, commonality, typicality and adequacy[10] – and that the action is "maintainable" under Rule 23(b)(3).[11] Under Rule 23(b)(3), "common" issues of law or fact must "predominate over any questions affecting only individual members," and a class action must be demonstrably "superior" to other methods of adjudication.[12]

For the purposes of a class certification motion, plaintiffs' allegations are to be taken as true and the Court does not examine the merits of plaintiffs' case.[13] Thus, the focus of the Court's inquiry in deciding this motion is simply on whether the Rule 23 requirements have been met, and not on the merits of plaintiffs' claims.

---

[10] *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 291 (2d Cir. 1999).

[11] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997).

[12] Fed. R. Civ. P. 23(b)(3).

[13] *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met."); *see also In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 135 (2d Cir. 2001) (a motion for class certification "is not an occasion for examination of the merits of the case"); *Caridad*, 191 F.3d at 293 (2d Cir. 1999) ("In deciding a certification motion, district courts must not consider or resolve the merits of the claims of the purported class."); *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 279 (S.D.N.Y. 2003) ("At class certification, the court determines whether the requirements of Rule 23 are met, not whether the claims are adequately pleaded or who will prevail on the merits.").

### B. Rule 23(a) Is Satisfied

#### 1. The Class Is So Numerous That Joinder Of All Members Is Impracticable

Rule 23 requires that the class must be "so numerous that joinder of all members is impracticable."[14] "Impracticability does not mean impossibility of joinder, but refers to the difficulty or inconvenience of joinder."[15] Although precise calculation of the number of class members is not required, and it is permissible for the court to rely on reasonable inferences drawn from available facts, numbers in excess of forty generally satisfy the numerosity requirement.[16]

Throughout the Class Period, Vivendi's ADSs were actively traded on the New York Stock Exchange, in a well-developed and efficient market. Complaint at ¶ 41. Vivendi's ordinary shares were actively traded on various overseas exchanges, including the EuroNext Paris S.A. (*Paris Bourse*), the London Stock Exchange and the Deutsche Boerse, also efficient markets. *Id.* As of December 31, 2001, the Company had more than 107 million ADSs, and more than 1 billion ordinary shares outstanding. *Id.* Therefore, the numerosity of the Class cannot be disputed. *Id.*[17]

---

[14] Fed. R. Civ. P. 23(a)(1); *Maywalt*, 147 F.R.D. at 54.

[15] *In re Indep. Energy.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002) (SAS) (citing *In re Avon Sec. Litig.*, No. 91 Civ. 2287, 1998 WL 834366, at *5 (S.D.N.Y. Nov. 30, 1998)).

[16] *Trief v. Dun & Bradstreet Corp.*, 144 F.R.D. 193, 198 (S.D.N.Y. 1992); *see In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280 (S.D.N.Y. 2002) (finding numerosity where the defendant had issued "[t]ens of millions" of ADSs in the United States); *see also In re Frontier Ins. Group Sec. Litig.*, 172 F.R.D. 31, 40 (E.D.N.Y. 1997) ("In securities fraud actions brought against publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period.").

[17] *See, e.g.*, *Dietrich*, 192 F.R.D. at 123 (allegations in a securities action that the defendant company was traded on the NASDAQ National Market System, had 22.5 million shares

### 2. There Are Questions Of Law Or Fact Common To Members Of The Class

Rule 23(a) requires a showing that common issues of fact or law affect all class members.[18] A single common question may be sufficient to satisfy the commonality requirement.[19] "The critical inquiry is whether the common questions are at the core of the cause of action alleged."[20]

The commonality requirement is generally considered a low hurdle that "has been applied permissively by courts in the context of securities fraud litigation."[21] In general, where putative

---

outstanding held by approximately 522 record holders were facts reasonable to "infer that the class is sufficiently large to meet Rule 23(a)'s numerosity requirement"); *In re Oxford Health*, 191 F.R.D. at 374 ("Here, because Oxford stock was traded in high volume during the class period, the precise number of class members could be, and very likely is, numbered in the thousands . . . [t]he [n]umerosity requirement is satisfied."); *see also Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1039 (5th Cir. 1981) (finding that numerosity is generally presumed when a claim involves a nationally traded security).

[18] Fed. R. Civ. P. 23(a)(2); *Trief*, 144 F.R.D. at 198.

[19] *German v. Federal Home Loan Mortgage Corp.*, 885 F. Supp. 537, 553 (S.D.N.Y. 1995); *see also Cutler v. Perales*, 128 F.R.D. 39, 44 (S.D.N.Y. 1989) (commonality "does not mean that all issues must be identical as to each [class] member, but it does require that plaintiffs identify some unifying thread among the members' claims that warrants class treatment'") (quoting *Kamean v. Local 363, Int'l Bhd. of Teamsters*, 109 F.R.D. 391, 394 (S.D.N.Y. 1986)).

[20] *D'Alauro v. GC Servs. Ltd. P'ship*, 168 F.R.D. 451, 456 (E.D.N.Y. 1996) (quotation omitted); *see In re Avon Sec. Litig.*, No. 91 Civ. 2287 (LMM), 1998 U.S. Dist. LEXIS 18642, at *15 (S.D.N.Y. Nov. 19, 1998) ("Commonality does not mandate that all class members make identical claims and arguments") (citation omitted); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1334 (S.D.N.Y. 1988) ("not every question of fact or law raised need be common to every member of the class"); *see also In re VMS Sec. Litig.*, 136 F.R.D. 466, 473 (N.D. Ill. 1991) (factual variations among class members' grievances will not defeat the commonality requirement so long as the claims arise from a "common nucleus of operative facts").

[21] *In re Blech*, 187 F.R.D. at 104.

interests are not antagonistic to the other members of the Class; and (ii) the representative party's attorney is qualified, experienced and generally able to conduct the litigation.[36]

First, as discussed above, the proposed class representatives' interests are co-extensive and do not conflict with class members' interests, and are typical of the claims of the other members. Plaintiffs and all class members have suffered losses due to their purchase of Vivendi securities. They have been injured by the same wrongful course of conduct of the defendants, and it is in the proposed class representatives' interests to vigorously prosecute this action on behalf of the Class.

With regard to the second component, proposed class counsel (Milberg Weiss and Abbey Gardy) are experienced class action attorneys who have qualified as lead counsel in numerous nationwide class actions (including this one). The proposed class counsel have substantial expertise in the investigation and prosecution of complex class actions, including those involving securities fraud.

### C. This Action Meets The Requirements Of Rule 23(b)(3)

Once plaintiffs demonstrate that the proposed class satisfies the elements of Rule 23(a), they must establish that the action is "maintainable" as defined by Rule 23(b). Rule 23(b) provides that "an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition" one of three alternative definitions of maintainability is met. This proposed class action is maintainable under subsection (b)(3), which requires "that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods

[36] *See In re Drexel Burnham*, 960 F.2d at 291; *In re Oxford Health*, 191 F.R.D. at 376; *Daniels v. City of N.Y.*, 198 F.R.D. 409, 414 (S.D.N.Y. 2001); *Genden v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 114 F.R.D. 48, 53 (S.D.N.Y. 1987).

for the fair and efficient adjudication of the controversy."[37] Rule 23(b)(3) thus has two elements: "predominance" and "superiority."

The issues of predominance and superiority are not amenable to a bright line test. Rather, the inquiry under this subdivision is whether class certification will ensure economies of time and money by allowing a few representatives to proceed on behalf of a larger whole so that a class action would be the most efficient method of proceeding.[38]

**1. Common Questions Of Law Or Fact Predominate**

"In order to meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."[39] "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions."[40] Accordingly, as the Supreme

[37] Fed. R. Civ. P. 23(b)(3).

[38] *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 668 (E.D.N.Y. 1986); *see also* Fed. R. Civ. P. 23(b)(3) Advisory Committee Note (acknowledging that class action is an appealing tool for adjudicating cases of "fraud perpetrated on numerous persons by the use of similar misrepresentations").

[39] *In re VISA Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 136 (2d Cir. 2001) (quotation marks and citation omitted); *see also* 7A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1778 at 528 (2d ed. 1986) (predominance requirement is generally found to be satisfied "[w]hen common questions represent a significant aspect of the case and they can be resolved for all members of the class in a single adjudication").

[40] *In re Prudential Sec. Inc. Ltd.. P'ships Litig.*, 163 F.R.D. 200, 206 (S.D.N.Y. 1995) (quoting *Dura-Bilt Corp.*, 89 F.R.D. at 93).

Court noted in *Amchem*, "[p]redominance is a test readily met in certain cases alleging consumer or securities fraud."[41]

As set forth above, the central focus of this litigation is defendants' knowing failure to disclose that Vivendi's operations and financial condition were dramatically weaker than what they led the public to believe. The uniform applicability of these liability issues is "readily susceptible to class-wide proof."[42] In fact, plaintiffs' allegations in this case constitute the type of common conduct that fits well within the Second Circuit's standards for class certification under Rule 23(b)(3).[43]

Moreover, whether any class member relied on a particular representation or material omission is not an issue in this case because reliance is presumed under the fraud on the market doctrine. As the Supreme Court explained:

> The fraud on the market theory is based on the hypothesis that, in an open and developed securities market, the price of a company's stock is determined by the available material information regarding the company and its business . . . . Misleading statements will therefore defraud purchasers of stock even if the purchasers do not directly rely on the misstatements.[44]

---

[41] *Amchem Prods.*, 521 U.S. at 625; *see also In re Lilco*, 111 F.R.D. at 668; *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *37 (E.D.N.Y. Apr. 23, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").

[42] *In re Baldwin-United*, 122 F.R.D. at 427; *In re Prudential*, 163 F.R.D. at 207 ("'[I]t would be folly to force each [investor] to prove the nucleus of the alleged fraud again and again.'" (quoting *In re Am. Cont'l Corp./Lincoln Sav. & Loan Sec. Litig.*, 140 F.R.D. 425, 431 (D. Ariz. 1992)).

[43] *Green,* 406 F.2d at 300-301; *In re Symbol Techs. Class Action Litig.*, 92-CV-3492 (JG), 1996 U.S. Dist. LEXIS 3297, *4 (E.D.N.Y. Mar. 18, 1996).

[44] *Basic Inc. v. Levinson*, 485 U.S. 224, 241-42 (1988) (quoting *Peil v. Speiser*, 806 F.2d 1154, 1160-61 (3d Cir. 1986)).

Thus, the fraud on the market doctrine dispenses with the requirement that an investor prove that he or she was aware of a particular misstatement, or that he or she directly relied on it.[45] As explained by the Second Circuit, the fraud on the market doctrine "creates a rebuttable presumption that (1) misrepresentations by an issuer affect the price of securities traded in the open market, and (2) investors rely on the market price of securities as an accurate measure of their intrinsic value."[46]

Rebutting the presumption of reliance is extremely difficult. As stated by the Supreme Court, "[i]t has been noted that 'it is hard to imagine that there ever is a buyer or seller who does not rely on market integrity. Who would knowingly roll the dice in a crooked crap game?'"[47] "Requiring a plaintiff to show a speculative state of facts, i.e., how he would have acted if omitted material information had been disclosed . . . or if the misrepresentation had not been made . . . would place an unnecessarily unrealistic evidentiary burden on the Rule 10b-5 plaintiff who has traded on an impersonal market."[48] Thus, at the class certification stage, defendants cannot rebut the presumption of reliance, challenge the typicality of plaintiffs' claims, nor raise reliance as a potential individual issue.[49]

---

[45] *Id.* at 246-47.

[46] *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 77 (2d Cir. 2004).

[47] *Basic*, 485 U.S. at 246-47 (citations and footnotes omitted).

[48] *Id.* at 244 (other citations omitted); *see also Blackie v. Barrack*, 524 F.2d 891, 908 (9th Cir. 1975) (reliance established by "proof of materiality [of alleged misrepresentations and omissions] coupled with the common sense that a stock purchaser does not ordinarily seek to purchase a loss in the form of artificially inflated stock") (quoted approvingly in *Basic*, 485 U.S. at 245).

[49] *See Gurary v. Winehouse*, 190 F.3d 37, 45 (2d Cir. 1999).

### 2. A Class Action Is The Superior Method Of Adjudication

The superiority prong of Rule 23(b)(3) requires a court to consider whether a class action is superior to other methods of adjudication.[50] The class action device is particularly appropriate for addressing the claims at issue in this case. The claims involve a large number of investors who are geographically dispersed, and whose relatively small claims make it prohibitively expensive to seek recovery through individual litigation.[51]

In addition, the four factors specified in Rule 23(b)(3) favor class certification.[52] First, individual members do not have an interest in controlling the action. Although a few Class members may have suffered damages substantial enough that might make it economically viable for them to bring their own suits (e.g., Liberty Media Corp.), this fact does not warrant a finding that Class members have an interest in individually controlling the litigation so that the action may not be certified under Rule 23(b)(3).[53] Second, plaintiffs are unaware of any other class litigation seeking recovery from defendants based on this conduct. Third, it is clearly desirable to concentrate litigation on behalf of all Class members in one forum. Inconsistent adjudications

[50] Fed. R. Civ. P. 23(b)(3); *see Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 164 (1974).

[51] *See Califano v. Yamasaki*, 442 U.S. 682, 690 (1979) (duplication of actions is the very "evil that Rule 23 was designed to prevent"); *Green v. Wolf Corp.*, 406 F.2d 291, 301 (2d Cir. 1968) ("the alternatives [to a class action] are either no recourse for thousands of [investors]" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake"); *see also Kennedy v. Tallant*, 710 F.2d 711, 718 (11th Cir. 1983) ("Separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts.").

[52] Fed. R. Civ. P. 23(b)(3).

[53] As one commentator has noted, and as the cases cited above demonstrate, the reference in Rule 23(b)(3) to the interest of individual class members in controlling the litigation relates to the interests of most or all of the class members, rather than the interests of only a few, since if only a small fraction of the class has an interest in controlling the litigation, their interest may be served by opting out of the suit, or by entering an appearance under Rule 23(c)(2) or by intervening. 2 H. NEWBERG, NEWBERG ON CLASS ACTIONS § 4.29 at 256 (4th ed. 2002).

will be avoided, thus promoting the fair and efficient use of the judicial system. Fourth, this case presents no unusual difficulties in the management of the action. Plaintiffs' counsel and the Court have handled numerous similar actions and the appropriate procedures and techniques for the management of such suits are well-established. Moreover, the flexibility provided to the Court under Rule 23 will enable it to address and resolve any management difficulties if they should arise.[54]

Thus, it is clear that securities suits such as this one easily satisfy the superiority requirement of Rule 23. Moreover, the alternatives to a class action are either no recourse for thousands of investors or a multiplicity of scattered suits resulting in the inefficient administration of litigation that follows.[55]

### D. Foreign Investors Who Purchased Vivendi Securities On Foreign Exchanges Are Proper Class Members

The Court has already concluded that, under the "conduct test" – which the Second Circuit has adopted to determine when extraterritorial application of the federal securities laws is warranted[56] – there is subject matter jurisdiction over the claims brought by foreign plaintiffs. In

---

[54] Fed. R. Civ. P. 23(c); Fed. R. Civ. P. 23(d).

[55] *Green*, 406 F.2d at 296 ("[A] class action may well be the appropriate means for expeditious litigation of the issues, because a large number of individuals may have been injured, although no on person may have been damaged to a degree which would have induced him to institute litigation solely on his own behalf."); *In re Blech*, 187 F.R.D. at 107 (superiority requirement satisfied as "[m]ultiple lawsuits would be costly and inefficient" and "although a large number of individuals may have been injured, no one person may have been damaged to a degree which would induce him to institute litigation solely on his own behalf"); *Bresson v. Thomson McKinnon Sec. Inc.*, 118 F.R.D. 339, 345 (S.D.N.Y. 1988) (average investment of $8,600 would probably not be deemed sufficient to justify individual actions); *Genden*, 114 F.R.D. at 53 ("[i]n an action such as this one where the claims are numerous and relatively small, individual claimants are unlikely to take on the burden and cost of litigation. The superiority of the class action in such cases is beyond dispute").

[56] *Alfadda v. Fenn*, 935 F.2d 475, 478 (2d Cir. 1991) (subject matter jurisdiction is appropriate "if the defendant's conduct in the United States was more than merely preparatory to the fraud,

denying defendants' motions to dismiss, Judge Baer cited, among other things, defendants' decision to move to the United States to more effectively "promote their misleading perceptions on Wall Street," along with the "pervasiveness and coextensiveness of fraud in the United States and abroad to sustain Vivendi stock price and the use of instrumentalities of interstate commerce to promulgate the alleged fraud."[57] Moreover, in denying defendants' motions for reconsideration, this Court refused to upset Judge Baer's ruling on subject matter jurisdiction, and declined to certify a Section 1292(b) appeal on the issue.[58]

Courts routinely certify classes that include foreign investors who purchased their shares on a foreign exchange.[59] For example, in a decision that the Second Circuit declined to disturb,

---

and particular acts or culpable failures to act within the United States directly caused losses to foreign investors abroad").

[57] *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (HB), 2003 U.S. Dist. LEXIS 19431, *22-23 (S.D.N.Y. Nov. 3, 2003) (citing *Europe and Overseas Commodity Traders, S.A. v. Banque Paribas London*, 147 F.3d 118, 130-31 (2d Cir. 1998) (finding "jurisdiction over a predominantly foreign securities transaction . . . when, in addition to communications with or meetings in the United States, there has also been a transaction on a U.S. exchange, economic activity in the U.S., harm to a U.S. party, or activity by a U.S. person or entity meriting redress."); *S.E.C. v. Princeton Econ. Intern, Ltd.*, 84 F. Supp. 2d 452, 454 (S.D.N.Y. 2000) (assuming subject matter jurisdiction for conduct that was "more than merely preparatory" and was "a substantial or significant contributing cause to the losses"); *In re Gaming Lottery*, 58 F. Supp. 2d 62, 67 (same); *Leonard v. Garantia Banking Ltd.*, No. 98 Civ. 4848, 1999 U.S. Dist. LEXIS 16046, at *18 (S.D.N.Y. Oct. 19, 1999) ("This Court finds that the trading of ADRs on the NYSE satisfies the conduct test, and any 'tipping of the scales' which might be required by [Europe and Overseas Commodity Traders, S.A.] is present in the use of United States banks and wire-transfer systems.")).

[58] *See In re Vivendi Universal, S.A. Sec. Litig.*, 02 Civ. 5571 (RJH), 2004 U.S. Dist. LEXIS 21230 (S.D.N.Y. Oct. 19, 2004).

[59] *See, e.g., In re Gaming Lottery*, 58 F. Supp. 2d 62, 76 (S.D.N.Y. 1999) (certifying class of both U.S. and Canadian residents in a suit against a Canadian corporation; "the factors weighing in favor of jurisdiction in this case extend beyond [defendant's] mere ownership of American assets, and relate to an alleged fraudulent scheme in which persons purchasing on American and Canadian exchanges were, in similar measure and in similar fashion, the intended as well as the actual victims of an integrated fraudulent scheme"); *see also Krangel v. Golden Rule Res., Inc.*, 194 F.R.D. 501, 502, 506, 510 (E.D. Pa. 2000) (certifying a class consisting of both U.S. and

Judge Berman addressed the issue of whether a proposed class of purchasers of Nortel Networks stock, which included foreign purchasers who had purchased their shares on a foreign exchange, should be certified under Rule 23. Judge Berman held that where – as in this case – the defendant foreign corporation allegedly "used its artificially inflated stock to fund an aggressive growth-by-acquisition strategy" and that "[m]any of these acquisitions involved properties in the United States," such factors supported the exercise of subject matter jurisdiction over the claims of foreign purchasers who had purchased their shares on a foreign exchange.[60] The *Nortel* court also noted that, as in this case, defendants had allegedly engaged in improper revenue recognition activities in the United States to boost its reported revenues.[61]

After reviewing the relevant Second Circuit precedents, the *Nortel* court held:

> Defendants' activities in the United States satisfy the test for subject matter jurisdiction. Among other things, [plaintiff] alleges that "defendants were consummating risky vendor financing deals in an effort to boost reported 'revenues' throughout the Class Period." (Compl. ¶ 64, at 26). According to [plaintiff], Defendants were extending vendor financing to "numerous U.S.

---

Canadian investors who purchased the stock of a Canadian corporation on the Toronto Stock Exchange); *Takeda v. Turbodyne Techs., Inc.*, 67 F. Supp. 2d 1129, 1139 (C.D. Cal. 1999) (certifying a class consisting of American and German investors, where defendant's stock was traded on the NASDAQ, the EASDAQ and the Vancouver Stock Exchange; "[i]t is evident there is no *per se* rule against the certification of a class whose members are both foreign and American investors. Nor is there a prohibition against having a mix of foreign and American investors serve as class representatives."); *Jordan v. Global Natural Res., Inc.,* 102 F.R.D. 45, 52 (S.D. Ohio 1984) (certifying a class that included the claims both foreign and U.S. purchasers against a U.K. corporation traded on the London Stock Exchange, and in over-the-counter markets in Germany and the United States).

60 *In re Nortel Networks Corp. Sec. Litig.*, No. 01 Civ. 1855 (RMB), 2003 U.S. Dist. LEXIS 15702, at *22 (S.D.N.Y. Sept. 5, 2003) (certifying class that included foreign purchasers), *interlocutory rev. denied sub nom. Ontario Pub. Serv. Employees Union Pension Trust Fund v. Nortel Networks Corp.*, slip op., No. 03-8038 (2d Cir. Nov. 24, 2003) (Ex. A); *cf.* Complaint at ¶¶ 23, 26, 191 (alleging that defendants used Vivendi's artificially inflated stock to fund its own aggressive scheme to acquire tens of billions of dollars worth of U.S. companies, and how roughly 50% of Vivendi's business was in the U.S. by the middle of the Class Period).

61 *Nortel* at *24; *cf.* Complaint at ¶¶ 169-80.

customers that defendants knew to be uncreditworthy, so as to artificially inflate the Company's revenues." (Pl. Reply at 9); *see In re Gaming Lottery Sec. Litig.*, 58 F. Supp. 2d 62, 73-75 (S.D.N.Y. 1999) ("Subject matter jurisdiction is thus supported by substantial fraudulent activity in the United States directly causing harm abroad, the manner in which the same fraudulent scheme allegedly straddled both sides of the border, and the degree of economic activity connecting [defendant] to the United States.").[62]

## IV. CONCLUSION

As demonstrated above, this action satisfies all the requirements of Rules 23(a) and 23(b)(3). Therefore, plaintiffs respectfully request that the Court grant plaintiffs' substituted motion for class certification and enter an order appointing Olivier M. Gerard, Miami Beach, Bruce Doniger, Gerard Morel, Capital Invest and William Cavanagh as class representatives, and appointing Milberg Weiss Bershad & Schulman LLP and Abbey Gardy, LLP as class counsel.

Dated: July 15, 2005

Respectfully submitted,

MILBERG WEISS BERSHAD &
SCHULMAN LLP

David J. Bershad (DB-9981)
Sol Schreiber (SS-5927)
William C. Fredericks (WF-1576)
Brian C. Kerr (BK-6074)
One Pennsylvania Plaza
New York, New York 10119
212.594.5300

[62] *Nortel* at *23-24 (citation omitted); *see also id.* at *20-21 (rejecting defendants' argument that issues of international comity or "judicial administration" justified refusal to exercise subject matter jurisdiction where the applicable standards for exercising jurisdiction were otherwise met).

ABBEY GARDY, LLP

Arthur N. Abbey (AA-8074)
James S. Notis (JN-4189)
Richard B. Margolies (RM-9311)
212 East 39th Street
New York, New York 10016
212.889.3700

*Co-Lead Counsel for Plaintiffs*

# CONFIDENTIAL MATERIAL OMITTED PURSUANT TO PROTECTIVE ORDER

# JA581-JA641

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: ______
DATE FILED: 12/14/07

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------- x

IN RE VIVENDI UNIVERSAL, S.A.
SECURITIES LITIGATION

No. 02 Civ. 5571 (RJH) (HBP)

This Document Relates To:

| | |
|---|---|
| 07 Civ. 5742 | 07 Civ. 7370 |
| 07 Civ. 7775 | 07 Civ. 7776 |
| 07 Civ. 7778 | 07 Civ. 7779 |
| 07 Civ. 7802 | 07 Civ. 7803 |
| 07 Civ. 7863 | 07 Civ. 8156 |
| 07 Civ. 8208 | 07 Civ. 8830 |
| 07 Civ. 9229 | 07 Civ. 9592 |
| 07 Civ. 9593 | |

**ORDER**

---------------------------------- x

1. The Court has concluded that consolidation of all Individual Action is appropriate. Based on a review of the parties' submissions, the Court has prepared a proposed scheduling order, a copy of which is attached. The parties are invited to comment on the proposed order by fax to Chambers no later than 5:00 p.m. on December 20, 2007.

2. It has come to the Court's attention that this action, 02 Civ. 5571, was never converted to ECF status. By this order this action will become an ECF action.

SO ORDERED.

Dated: New York, New York
December 14, 2007

Richard J. Holwell
United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE VIVENDI UNIVERSAL, S.A.
SECURITIES LITIGATION

No. 02 Civ. 5571 (RJH) (HBP)

This Document Relates To:

07 Civ. 5742 07 Civ. 7370
07 Civ. 7775 07 Civ. 7776
07 Civ. 7778 07 Civ. 7779
07 Civ. 7802 07 Civ. 7803
07 Civ. 7863 07 Civ. 8156
07 Civ. 8208 07 Civ. 8830
07 Civ. 9229 07 Civ. 9592
07 Civ. 9593

**PROPOSED**
**SCHEDULING ORDER**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

A conference having been held in these cases on October 30, 2007; the parties having submitted proposals regarding scheduling in the above-captioned actions (the "Individual Actions"); and the Court having considered the submissions of the parties, it is hereby ordered:

1. This Order shall apply to the Individual Actions and to any related individual actions hereafter filed, which individual actions shall thereafter automatically be deemed to be "Individual Actions" subject to this Order, unless relief from this Order is granted by the Court.

2. The provisions of the Confidentiality Order in the Class Action shall apply to the Individual Actions. Counsel for the plaintiffs in each of the Individual Actions (the "Individual Plaintiffs") shall be entitled to full and equal access to all discovery in the Class Action on the same terms as counsel for the Lead Plaintiffs in the Class Action, and in accordance with the terms set forth in said Confidentiality Order.

Case 15-208, Document 90, 08/12/2015, 1574534, Page39 of 43

3. The Individual Actions are consolidated with each other and with the Securities Class Action for all purposes. The Court finds that considerations of convenience and judicial economy warrant consolidation. The Individual Plaintiffs will not be unduly prejudiced as they will not be deprived of the right to take necessary supplemental discovery, retain experts, or pursue independent strategies for trial or settlement. Their claim of possible prejudice resulting from the application of the provisions of the Securities Litigation Uniform Standards Act is at this point premature and would not justify the separate trial of the claims of over fifty Individual Plaintiffs as well as those of the class, all of which raise common questions of law and fact.

4. Upon the consent of the parties, there shall be no stay of discovery in the event that defendants move to dismiss the Individual Actions.

5. By January 4, 2008, defendants in the Class Action shall provide to counsel for the Individual Plaintiffs: (1) all of the documents and all of the other discovery that defendants have produced in the Class Action; (2) all of the depositions and all of the deposition exhibits in the Class Action; (3) all of the documents and all of the other discovery that defendants in the Class Action have received from non-parties including, but not limited to, all documents and all other materials that non-parties have produced to defendants in response to subpoenas *duces tecum*; (4) all discovery requests, formal responses and correspondence explaining any limitations on what was produced in response to requests; and (5) all pleadings and court papers filed in the class action. To the extent presently available, all such discovery materials should be produced to counsel for the Individual Plaintiffs in the form of CDs, hard drives, or other appropriate computer-searchable media.

6. By January 4, 2008, Lead Plaintiffs in the Class Action shall provide to counsel for the Individual Plaintiffs: (1) all of the documents and all of the other discovery that plaintiffs have produced in the Class Action; and (2) all of the documents and all of the other discovery that plaintiffs in the Class Action have received from non-parties including, but not limited to, all documents and all other materials that non-parties have produced to plaintiffs in response to subpoenas *duces tecum*. To the extent presently available, all such discovery materials should be produced to counsel for the Individual Plaintiffs in the form of CDs, hard drives, or other appropriate computer-searchable media.

7. By March 4, 2008 the Individual Plaintiffs shall serve any notices of deposition. With respect to any witnesses who have already been deposed ("follow-up depositions"), counsel for the Individual Plaintiffs shall identify in an attachment to the notice of deposition the topics they believe have not been fully and fairly covered in the prior deposition. If, after conferring with Individual Plaintiffs' counsel, defendants object to the scope of any follow-up deposition, they may apply to Judge Pitman on March 7 for an order limiting such deposition. Judge Pitman will rule on any such objections during the week of March 10, 2008. All fact depositions noticed by the Individual Plaintiffs shall be completed by May 5, 2008.

8. The Individual Plaintiffs may serve non-duplicative document requests that seek documents not already produced by defendants. Any such request shall be served by March 4, 2008.

9. By December 28, 2007 defendants shall serve upon Individual Plaintiffs any (a) document requests, (b) interrogatories regarding standing and (c) other

Case 15-2081, Document 90, 08/12/2015, 1574534, Page41 of 43

interrogatories contemplated by Local Rule 33.3. Individual Plaintiffs shall respond by January 31, 2008.

10. By February 15, 2008, defendants shall serve any deposition notices upon Individual Plaintiffs. All depositions of Individual Plaintiffs shall be completed by April 15, 2008.

11. Defendants' expert disclosures shall be made, as previously scheduled, on January 14, 2008. The Court understands that Class Plaintiffs' expert disclosures have already been made.

12. Depositions of Defendants' experts, Class Plaintiffs' experts and Liberty Media's experts shall be completed between March 4 and April 4, 2008.

13. By May 5, 2008 Individual Plaintiffs shall file expert disclosures, and defendants shall simultaneously file any supplemental expert disclosures relating only to claims made by the Individual Plaintiffs. Depositions of these experts shall be completed by June 6, 2008.

14. Defendants' motions to dismiss the Individual Plaintiffs' actions, if any, shall be filed on April 15, 2008. Opposition papers shall be filed on May 15, 2008. Reply papers shall be filed by May 23, 2008.

15. Summary judgment motions, if any, shall be filed on June 15, 2008. Opposition papers shall be filed on July 15, 2008. Reply papers shall be filed on July 25, 2008.

16. Trial will begin on October 13, 2008.

SO ORDERED.

Dated: New York, New York
December 14, 2007

Richard J. Holwell
United States District Judge

# CONFIDENTIAL MATERIAL OMITTED PURSUANT TO PROTECTIVE ORDER

# JA648-JA844